IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR 12-306 SI |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| DENIS NAHUN-TORRES, | |
| Defendant. | |

Defendant Denis Nahun-Torres ("Torres") moves for dismissal of the indictment against him. The government has filed its opposition to the motion and defendant has filed a reply. The Court heard argument on the motion on December 7, 2012. Having read the parties' thoughtful, thorough papers and considered the parties' arguments, the Court hereby GRANTS defendant's motion, for the reasons discussed below.

On April 26, 2012, Torres was indicted for illegal reentry pursuant to 8 U.S.C. § 1326. The grand jury charged that Torres, having been removed twice from the United States, was found in the Northern District of California without authorization. Torres seeks dismissal of the indictment on the grounds that an earlier removal order, January 19, 2005, which formed the basis of the two charged removals alleged in the instant indictment (2007 and 2010), violated his due process rights; and, therefore, that the 2007 and 2010 removals cannot serve as the necessary predicates for the instant illegal reentry charge. He attacks the earliest (January 19, 2005) removal order by alleging that the immigration judge's ("IJ's") removal order violated his due process rights by removing him *in abstentia*, where he was not properly served notice of his immigration hearing. The 2005 removal order was the basis for the issuance of a

subsequent September 17, 2007, Warrant of Removal, and actual physical deportation on October 4, 2007. The October 4, 2007 deportation, in turn, was the basis for a December 5, 2008, immigration reinstatement order (reinstating the 2005 removal order) and was the predicate removal cited in the December 11, 2008, Northern District of California indictment charging illegal reentry pursuant to 8 U.S.C. § 1326. *See United States v. Torres*, No. Cr. No. 08-0913-SI (N.D. Cal.).

Torres pleaded guilty to the 8 U.S.C. § 1326 violation alleged in Cr. No. 08-0913-SI, and was physically deported again on May 10, 2010 – this time pursuant to the December 5, 2008, reinstatement order. *Id.* at Dkt. 6. Although the criminal charge in that case was predicted on the same 2007 removal as the instant indictment, Torres does not challenge that conviction. Instead, he challenges the use of the 2007 and 2010 removals in the instant indictment because they are derivative of the allegedly invalid 2005 removal. Independent of the allegedly invalid 2005 removal, he also attacks the 2007 removal on the grounds that the immigration service failed to advise him of his right to reopen his immigration proceedings. The underlying facts, gathered from the moving papers, removal orders, and attached declarations, are as follows.

Torres was born on March 14, 1988, in Tegulcigalpa, Honduras. He came to the United States without authorization and entered without inspection in 2004, at age sixteen, "to work and make money to send to my family back in Honduras." Linker Decl. Ex. A, ¶ 3 (hereinafter "Torres Decl."). After leaving Honduras on a bus to Guatemala, and taking a train from Guatemala to Mexico, Torres "met someone who said he could help me cross the border." *Id*. ¶ 4. Shortly after entering the United States, U.S. Border Patrol agents near Nogales, Arizona, detained him on September 1, 2004. *Id.*; Linker Decl. Ex. C.

**1.     The 2005 Removal.**

From September 1 to October 18, 2004, Torres, then a juvenile, was in the custody of the Southwest Key Program, a "[n]onprofit, charitable 501(c)(3) Social Service, Education, and

Community Organization." *See* Southwest Key Program website at http://www.swkey.org/about (last visited Dec. 5, 2012). While it is not a government program, Southwest Key Program does receive federal funding and has a contract with the U.S. Department of Health and Human Services, Office of Refugee and Resettlement. As a result, it routinely houses juveniles who are in the Office of Refugee and Resettlement's custody incident to an alleged immigration violation. Kang Decl., Ex. A, ¶ 2-5 (hereinafter "A. Torres Aff.").

On September 2, 2004, the immigration service[1] issued a Notice to Appear ("NTA") alleging that Torres was "an alien present in the United States who has not been admitted or paroled" and was therefore removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. Linker Decl., Ex. D. The NTA was provided to and signed by Torres in English, but oral notice was provided to him in Spanish. *Id.* The NTA was personally served on Torres while he was staying at the Southwest Key Program shelter. Although he was a juvenile under the supervision of adult guardians at the shelter, Torres Aff. ¶ 5 [sic], service of the NTA was only made on him, Linker Decl., Ex. D. The NTA indicates that Torres was to appear before an IJ on "a date to be set at a time to be set" in order to show cause why he should not be deported from the United States. Linker Decl., Ex. D.

On or about October 18, 2004, Torres was released to the custody of his father, Casimiro Torres. Torres Decl. ¶ 7. At that time, an officer of the Executive Office of Immigration Review – the court that presides over immigration hearings – entered a Form I-803, noting that Torres could be contacted at his father's address, "C/O Casimiro TORRES, 520 S. Hailey St. Apt 129, Irving, TX 75060." Linker Decl., Ex. F. The Form I-803 left blank a box indicating that "the respondent was reminded of the requirements contained in section 239(a)(1)(F)(ii) of the Immigration and Nationality Act and was provided with an EOIR Change of address form (EOIR-33)." *Id.*

---

[1] For convenience, the Court uses "immigration service" to mean both the Immigration and Naturalization Service, as it was known in 2004, and the Department of Homeland Security's United States Immigration and Customs Enforcement, as it is now known.

On October 21, 2004, the immigration court issued a Notice of Hearing in Removal Proceedings, notifying Torres of his "Master/Individual hearing" scheduled for December 1, 2004, at **"919 Dragon Street, Dallas, TX 75207**." Linker Decl., Ex. G (emphasis added). This Notice was apparently mailed to "*UJ-Nahun-Torres, Denis c/o Mr. Celestine Abrego/Southwest Key Program, **919 Dragon Street, Dallas, TX 75207**," (emphasis added). *Id.* The Notice also indicates that if the respondent's address is not listed on the NTA, as Torres' was not, "WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION COURT DALLAS, TX THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS." *Id.* Although this Notice of Hearing was apparently mailed to the Southwest Key Program – where the hearing itself was also apparently to be held – Torres had by then left the Southwest Key Program shelter to his father's custody, and had provided an alternate address, as noted on the Form I-803. Linker Decl., Ex. F.

On December 1, 2004, a second Notice of Hearing in Removal Proceedings was issued, notifying Torres that his "Master Hearing" was to take place on January 19, 2005, at "1100 Commerce Street., Room 404, Dallas, TX 75242." Linkler Decl., Ex. H. This second Notice was addressed to "*J1-NAHUN-TORRES, DENIS, C/O CASIMIRO TORRES, 520 S. HAILEY ST., Apt 129, Irving, TX 75060." *Id.* Although that address matches the address provided on the Form I-803, the envelope containing the Notice was marked by the post office "RETURN TO SENDER UNKNOWN REASON UNABLE TO FORWARD" and returned to the Immigration Court. Linker Decl., Ex. I. The envelope appears not to have been labeled with *any* address or the address is impossibly obscured. *Id.*

On January 19, 2005, an immigration hearing was held at which a removal order was entered against Torres *in abstentia*. Torres contends that he did not attend the hearing because neither he nor his father received notice of the hearing. Torres Decl. ¶ 8. At the hearing the IJ stated, "The notice was sent to the appropriate address. It was received. It was not returned and

4

…accordingly I am satisfied that the NTA was personally served. Notice was provided to the last known address." Linker Decl., Ex. J. The IJ found that Torres was removable based on the I-213 submitted by the government and that any relief from removal was deemed abandoned because of Torres' failure to appear. *Id.* In his written decision on the same day, the IJ reiterated that "the respondent was provided written notification of the time, date and location of the respondent's removal hearing," and that written notice provided warnings of the consequences of failing to appear. *Id.*, Ex. K. As his justification for removal, the IJ checked the box stating "At a prior hearing the respondent admitted the factual allegations in the Notice to Appear and conceded removability." *Id.* The record contains no evidence of a prior hearing and Torres contends that there had been no prior hearing. Mot. at 5. The certificate of service notes that the IJ's order was served via mail on the alien. Linker Decl., Ex. K.

Torres disputes that he was ever properly notified of the hearing, as the record does not show that the NTA was ever given to his father, the first hearing notice was not mailed to the address he provided, and the second notice was marked returned to sender, contrary to the IJ's statement that "it was not returned." Linker Decl., Ex. J.

### 2. The 2007 Removal.

No action was taken to enforce the 2005 removal order until the immigration service found Torres in California as a result of his arrest for violation of California Health and Safety Code section 11351.5 (sale of base cocaine) on August 8, 2007. Linker Decl., Ex. M. On August 9, 2007, immigration officers interviewed Torres while he was in custody, and generated an I-213 Form "Record of Deportable/Inadmissible Alien" based on Torres' admissions during that interview that he was a native and citizen of Honduras who entered the United States illegally. Kang Decl., Ex. D. Torres pleaded guilty to the cocaine charge and was sentenced to time served on September 17, 2007. Linker Decl., Ex. M. On or about September 17, 2007, Torres came into the custody of immigration services, whereupon a Warrant of Removal was

5

issued based on the January 19, 2005 removal order. Kang Decl., Ex. D; Linker Decl., Ex. N. Torres was physically deported from the United States to Honduras on October 4, 2007. *Id.* Torres claims that the immigration officer who interviewed him on August 9, 2007, Brian Turek, informed him that he was going to be deported and did not have any right to contest his deportation. Torres Decl. ¶ 11.

### 3. The 2010 Removal.

On April 5, 2008, Torres was arrested in San Francisco, California, for violation of California Health and Safety Code section 11352, "transport/sell of narcotic or controlled substance." Kang Decl., Ex. E. Torres pleaded guilty and was sentenced to one year in county jail, with credit for 173 days of time served. Kang Decl., Ex. F. As a result of his incarceration in county jail, Torres again came to the attention of immigration authorities. *Id.*, Ex. E. On or about December 5, 2008, immigration authorities interviewed Torres in the San Francisco County Jail, whereupon they created a Form I-213, Record of Deportable/Inadmissible Alien, based on Torres' admission in a sworn statement that he was previously deported from the United States to Honduras. *Id.*

After coming into the custody of immigration services, Torres was referred to the U.S. Attorney's office for federal prosecution. Kang Decl., Ex. C. On December 11, 2008, a federal grand jury returned a criminal indictment charging Torres with violation of 8 U.S.C. § 1326. *United States v. Torres*, CR. No. 08-0913-SI (N.D. Cal.). The indictment lists Torres' October 4, 2007 deportation as the basis for the prior removal element of a § 1326 offense. Kang Decl., Ex. G. The indictment further alleges "that the defendant was removed from the United States subsequent to the date of conviction for an aggravated felony." *Id.* Torres pleaded guilty to the offense, and in so doing, admitted each element of the offense, including that he was previously deported from the United States on or about October 4, 2007. Torres was sentenced to 18 months in federal prison, a fine, and a term of supervised release. *Id.* After serving his federal

sentence, Torres was physically deported from the United States to Honduras on May 20, 2010, pursuant to a December 5, 2008 reinstatement order, reinstating his January 19, 2005 removal order based on his October 4, 2007 deportation.

### 4. The 2012 Federal Indictment.

On March 26, 2011, Torres again came to the attention of immigration authorities when he was found in the United States pursuant to his arrest for the transport/sale of a controlled substance in violation of California Health and Safety Code section 11352. Kang Decl., Ex. I. Subsequent to state proceedings on that charge, on April 26, 2012, a federal grand jury indicted Torres for illegal reentry in violation of 8 U.S.C. § 1326, charging his October 4, 2007 and May 20, 2010 deportations as predicates for the prior removal element of the offense. Torres has moved to dismiss this indictment, based on his challenge to the validity of these predicate removals as derivative of the earlier January 19, 2005 removal order.

## LEGAL STANDARD

"A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo-Figuero*, 364 F.3d 1042, 1047-48 (9th Cir. 2004) (*citing United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987)). To sustain a collateral attack under § 1326(d), a defendant must demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). An underlying removal order is "fundamentally unfair" if "(1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Ubaldo-Figuero*, 364 F.3d at 1048 (*citing United*

*States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998)).

## DISCUSSION

This is a criminal case, not an immigration appeal. The only question before the Court on this motion to dismiss is whether the government can sufficiently establish each element of the 8 U.S.C. § 1326 offense charged in the criminal indictment. To convict a defendant of violating 8 U.S.C. § 1326, the government must prove that the defendant is an alien, who was previously removed from the United States, and subsequently reentered or was found in the United States, without the express consent of the Attorney General. 8 U.S.C. § 1326(a). The crime is punishable by a fine and imprisonment. *Id.* §§ 1326(a) and (b).

Torres' motion does not appeal any decision of the immigration court or the IJ. Nor does it seek to avoid any additional or subsequent immigration consequences, such as deportation, that may result from civil or administrative immigration proceedings. Moreover, Torres does not attack his prior illegal reentry conviction, for which he has already served jail time and paid a fine. *See United States v. Torres*, CR. No. 08-0913-SI (N.D. Cal.). Instead he seeks to avoid criminal liability, imprisonment, and possible fines *in this case* on the grounds that the government cannot establish that he was previously properly removed.

In particular, he argues that the prior removal orders on which the indictment is based are invalid because they were issued in violation of his constitutional right to due process. For the reasons discussed below, the Court agrees that the predicate removals are invalid and therefore DISMISSES the criminal indictment against Torres.

**1.    Whether entry of the January 19, 2005 Removal Order was fundamentally unfair.**

To show that entry of the January 19, 2005 removal order was "fundamentally unfair," Torres must first show that his due process rights were violated by defects in the underlying deportation proceeding. *Ubaldo-Figuero*, 364 F.3d at 1048. Torres alleges two defects: (1) the

8

immigration service did not properly serve notice on him, or his guardian, of the hearing where he was subsequently ordered removed *in abstentia*; and (2) that he was denied due process of law when the immigration service removed him from the United States without informing him of his right to reopen his 2005 *in abstentia* proceeding. Because the Court agrees that the first defect is fatal, the Court need not address the second.

### A. Whether Ninth Circuit or Fifth Circuit Law Applies.

As a threshold matter, the parties dispute whether Ninth Circuit or Fifth Circuit law governing service of minors applies to the due process violation alleged here. For any juvenile under 18 years of age in immigration proceedings, Ninth Circuit law requires service on both a responsible adult and the juvenile. *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1153 (9th Cir. 2004). Fifth Circuit law, however, does not require service on a responsible adult and provides that service may be made on juveniles over the age of 14 in immigration proceedings. *Lopez-Dubon v. Holder*, 609 F.3d 642, 646-47 (5th Cir. 2010). The government argues that Fifth Circuit service requirements apply because the 2005 hearing took place in Dallas, Texas, and "any challenge to the IJ's decision would eventually be heard by the Fifth Circuit." Opp. at 6. The government cites 8 U.S.C. § 1252(b) for the proposition that challenges to immigration proceeding "shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." *See* 8 U.S.C. § 1252(b).

The Court rejects the government's position for several reasons. This is a criminal case before a district court in the Ninth Circuit, not an immigration appeal. 8 U.S.C. § 1252(b) governs challenges to immigration proceedings, not collateral attacks in criminal proceedings. The government has filed criminal charges against the defendant for unlawful reentry, and as an element of that offense, the government must show that his prior removals were lawful. As such, Torres has a constitutional right to challenge the removal order that forms the basis of the government's charge. *See Mendoza-Lopez*, 481 U.S. at 837; 8 U.S.C. § 1326(d). With 8 U.S.C.

§ 1326(d), Congress provided a separate mechanism for defendants to challenge a removal order *in criminal proceedings,* outside of the administrative immigration appeals process. *Mendoza-Lopez*, 481 U.S. at 837-39. Thus, the first flaw in the government's argument is that it assumes that rules governing immigration appeals automatically govern criminal proceedings.

Over a century ago, the U.S. Supreme Court drew a line between immigration law, as civil or administrative, and criminal law when it decided that because deportation is not a criminal punishment, aliens in deportation proceedings do not automatically qualify for the constitutional protections available to criminal defendants. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 730 (1893) (immigration proceedings are "in no proper sense a trial and sentence for a crime or offense" because "[t]he order of deportation is not a punishment for crime," but rather, "a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation . . . has determined that his continuing to reside here shall depend."); *Wong Wing v. United States*, 163 U.S. 228 (1896) (statute imposing one year of hard labor and imprisonment prior to deportation was unconstitutional unless Fifth and Sixth Amendment criminal protections applied). In particular, a defendant charged with a crime is entitled to a host of constitutionally-derived rights largely unavailable to an alien facing removal. *See, e.g.*, *Oliver v. INS*, 517 F.2d 426, 428 (2d Cir. 1975) (refusing to apply double jeopardy to civil deportation proceeding); *Fong Yue Ting*, 149 U.S. at 730 (no right to a trial by jury in immigration proceedings); *Linnas v. INS*, 790 F.2d 1024, 1029-30 (2d Cir. 1986) (no prohibition on bill of attainder because deportation is not a legislative punishment); *Vides-Vides v. INS*, 783 F.2d 1463, 1469-70 (9th Cir. 1986) (no Sixth Amendment right to counsel at government expense in deportation proceedings); *Harisiades v. Shaughnessy*, 342 U.S. 580, 593-96 (1952) (ex post facto clause does not apply to a statute making alien deportable based on past Communist Party membership); *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984) (rejecting the exclusionary rule in deportation proceedings); *Woodby v. INS*, 385 U.S. 276 (1966) (rejecting proof beyond a

10

reasonable doubt in deportation proceedings); *Briseno v. INS*, 192 F.3d 1320, 1323 (9th Cir. 1999) (denial of discretionary relief from deportation does not violate Eighth Amendment); *Wall v. I.N.S.*, 722 F.2d 1442 (9th Cir. 1984) (Fifth Amendment right to silence at deportation hearings unavailable except where there is a possibility of future criminal prosecution). Accordingly, when the United States decided to charge Torres with a crime, it made available to him a host of constitutional protections largely unavailable in civil or administrative immigration appeals under 8 U.S.C. § 1252(b), including a right to raise a due process challenge to the government's ability to prove each element of the criminal offense charged.

To decide whether an element of a criminal offense comports with due process, this Court follows authority from this Circuit. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2011). In fact, courts often apply the law of their own circuit even where the underlying proceeding arose elsewhere. For example, in *United States v. Aguirre-Tello*, 353 F.3d 1199 (10th Cir. 2004), a § 1326 illegal reentry case, the defendant challenged the legality of the underlying removal order, which had occurred in California, arguing that the IJ failed to inform him of his right to seek discretionary relief. The Tenth Circuit tested that claim under Tenth Circuit standards, in the process considering and rejecting the Ninth Circuit's standard, set out in *United States v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001), regarding the responsibilities of immigration judge's to inform an alien of eligibility for discretionary relief.

In other criminal contexts, the Ninth Circuit has applied the law of its own circuit to determine whether a conviction that occurred in another jurisdiction qualifies for a sentencing enhancement. *See, e.g.*, *United States v. Baza-Martinez*, 464 F.3d 1010, 1014 (9th Cir. 2006) (using Ninth Circuit law to determine whether a North Carolina state conviction is a crime of violence); *United States v. Castillo-Marin*, 684 F.3d 914, 922-25 (9th Cir. 2012) (using Ninth Circuit law to decide whether conviction under New York statute is a crime of violence); *United States v. Lopez-Solis*, 447 F.3d 1201, 1204-09 (9th Cir. 2006) (using Ninth Circuit law to determine whether conviction under Tennessee statutory rape statute is a crime of violence).

11

Similarly, in the Fourth Amendment context, the Ninth Circuit applies Ninth Circuit law to evaluate the lawfulness of warrants or searches and seizures that occurred elsewhere. *See, e.g., United States v. Williams*, 989 F.2d 1061, 1066 (9th Cir. 1993) (using Ninth Circuit law to evaluate the lawfulness of a search warrant originally issued by a Colorado judge); *United States v. Palmer*, 536 F.2d 1278, 1280 (9th Cir. 1976) (using Ninth Circuit law to evaluate the lawfulness of a search and seizure that occurred in Utah). Thus, it is an unremarkable proposition that this Court would use Ninth Circuit due process standards to analyze whether the government can sustain each and every element of a criminal offense.

Even if Fifth Circuit due process standards govern this Ninth Circuit criminal conviction, the Fifth Circuit did not suggest in its 2010 *Lopez-Dubon* decision that the decision would apply retroactively to a 2005 proceeding. Further, the allegedly invalid notice at issue in *Lopez-Dubon* was not the same notice at issue in this case. In *Lopez-Dubon*, the alien alleged that the government failed to properly serve what is akin to a "hearing notice," which notifies the alien of the time and location of a hearing. *Lopez-Dubon*, 609 F.3d at 643-44. There the alien conceded that he was informed that removal proceedings had been instituted against him and that he was aware that he would have to attend a court proceeding at some point. *Id.* at 646. The Fifth Circuit, citing *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 314 (1950), found that given this concession, the hearing notice which was mailed to the alien's last known address, was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 646. This differs markedly from the instant case, where the defendant challenges improper service of the "notice to appear" (what was at the time called an "order to show cause"), a more detailed document akin to a complaint in civil cases, which differs markedly from a mere hearing notice. Thus, it is not clear from *Lopez-Dubon* that the Fifth Circuit would have sanctioned the due process abuses in both the notice to appear and hearing notices Torres alleges.

The government argues that applying Ninth Circuit law here would require immigration

12

judges to be clairvoyant in predicting where aliens will travel in order to determine which circuit's laws apply. The government also argues that inconsistent standards would create conflict and continual tension between this circuits. These arguments, however, misstate the issue. The issue here is whether a court in the Ninth Circuit, confronted with a constitutional due process challenge to a crime that occurred in the Ninth Circuit, should apply this Circuit's laws to that due process challenge. Whatever decision this Court makes on that question applies only to this criminal indictment and this motion; it would not bind any other administrative civil or criminal proceeding in a different court. In this criminal case, this Court is without power or jurisdiction to direct an immigration court or district court elsewhere to reopen an administrative immigration proceeding or invalidate a removal order. The only concern here is whether Torres' indictment complies with due process as the Ninth Circuit has defined it. Accordingly, the Court now turns to that question.

### B. The January 17, 2005 removal order.

Proper notice of an immigration hearing is first accomplished through a written Notice to Appear, which advises an alien that removal proceedings have begun, and provides the date, time and location of the hearing. See 8 U.S.C. § 1229(a). The NTA is a statutorily required document that must specify at least ten separate notices. *Id.* Where the immigration court changes the date, time or location, "hearing notices" must be issued. These hearing notices, unlike the NTA, need not contain all ten items, but only notice of the time and place, and of the consequences of failing to appear. The NTA must be given in person to the alien unless it was not practicable to do so, in which case it can be mailed. *Id.* To be consistent with Ninth Circuit due process norms, the immigration service is required to "serve notice both to the 'juvenile' as defined in 8 C.F.R. § 242.24, and to the person to whom the regulation authorizes release," i.e., a parent or guardian. *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1153 (9th Cir. 2004). "Juveniles are presumed unable to appear at immigration proceedings without the assistance of

13

an adult." *Id.* at 1157. "Without an adult who is charged with ensuring the juvenile's well-being and compliance," the Ninth Circuit reasoned, "the juvenile is at risk of failing to keep his obligations to the court." *Id.*

It is unremarkable, therefore, that Torres failed to appear at the January 17, 2005 hearing, given the government's numerous service errors evidenced in the record. First, the government failed to provide the NTA to Torres' father. While the record indicates that Torres himself was provided with the NTA on or around September 2, 2004, the government does not provide evidence that Torres' father was served. Instead, the government cites the declaration of Adriana Torres, Assistant Program Director at the Southwest Keys Program when Torres was housed there, to show the general practice at the time. According to Ms. Torres, the general practice was to provide copies of any immigration court documents, including the NTA, hearing notices, and a change of address form (EOIR-33) to the parent of guardian signing out a juvenile. Kang Decl., Ex. A, ¶ 7-8. Ms. Torres, however, says nothing about what happened in *this case*. In this case, the only evidence in the record is that Torres himself says that NTA was not provided, Torres Decl. ¶ 8-9, and a EOIR-33 Form lodged with immigration services when Torres was signed out, which indicates that immigration authorities did *not* inform Torres of certain information regarding the statutory requirement that he update immigration services with any change of address.

To compound this failure to provide the NTA, the government subsequently misdirected two hearing notices that may have informed Torres and his father of the pendency of the proceedings. On October 21, 2004, the immigration court issued a Notice of Hearing in Removal Proceedings, notifying Torres of his "Master/Individual hearing" scheduled for December 1, 2004 at "919 Dragon Street, Dallas, TX 75207." Linker Decl., Ex. G. Instead of mailing it to the address Torres provided when he left Southwest Key Program days earlier, this Notice was apparently mailed to Torres at the Southwest Key Program, "*UJ-Nahun-Torres, Denis c/o Mr. Celestine Abrego/Southwest Key Program, 919 Dragon Street, Dallas, TX

14

75207." *Id.* The second hearing notice, mailed on December 1, 2004, notified Torres that his "Master Hearing" was to take place on January 19, 2005 at "1100 Commerce Street., Room 404, Dallas, TX 75242." Linker Decl., Ex. H. It was address to Torres and his father,"*J1-NAHUN-TORRES, DENIS, C/O CASIMIRO TORRES, 520 S. HAILEY ST., Apt 129, Irving, TX 75060." *Id.* Although that address matches the address provided on the Form I-803, the Notice was marked "RETURN TO SENDER UNKNOWN REASON UNABLE TO FORWARD" and returned to the Immigration Court. Linker Decl., Ex. I. Although the envelope is unclear, what is clear is that the envelope was in fact returned to the immigration court and never delivered to the addressee. *Id.*

The government counters that even under Ninth Circuit analysis, service on a last known address of both Torres and his father would be sufficient. *See Popa v. Holder*, 571 F.3d 890, 897-98 (9th Cir. 2009). That case, however, is distinguishable. There the alien, an adult, failed to update her address and therefore the immigration court mailed the NTA to her last known address. Here, immigration authorities not only failed to provide Torres' father with the NTA, they mailed the first hearing notice advising Torres only of the date, time and place of the hearing, to an address *other than* his last known address, which he had apparently provided days earlier. Second, even if the second notice had reached Torres and his father, it is no substitute for the NTA, which contains additional, vital information, beyond the basic change of time and date information in the hearing notice.

Moreover, here, the supposed service of notices and Torres' subsequent failure to appear at the January 17, 2005 hearing impacted the merits of that hearing. At the hearing, the IJ noted, "the respondent was provided written notification of the time, date and location of the respondent's removal hearing," and that written notice provided warnings of the consequences of failing to appear. Linker Decl., Ex. K. As a result of this mistaken impression that due process had been satisfied, the IJ ordered Torres' removed *in abstentia*. The IJ's written opinion also indicates, erroneously, "At a prior hearing the respondent admitted the factual allegations

15

in the Notice to Appear and conceded removability." *Id.* There is no evidence in the record, and Torres denies such a prior hearing.

The sum of these errors is that Torres was effectively denied due process because he was never properly notified of the hearing wherein he was removed. Moreover, a close review of the record reveals that the January 17, 2005 removal order was the basis for all of Torres' subsequent removal orders and deportations. The 2005 removal order was the basis for the issuance of a subsequent September 17, 2007, Warrant of Removal, and actual physical deportation on October 4, 2007 (collectively the "2007 Removal"). The October 4, 2007 deportation, in turn, was the basis for a December 5, 2008, immigration reinstatement order (reinstating the 2005 removal order) and was the predicate removal cited in the December 11, 2008, Northern District of California indictment charging illegal reentry pursuant to 8 U.S.C. § 1326. *See United States v. Torres*, No. Cr. 08-0913-SI (N.D. Cal.). After serving his sentence in that case, Torres was deported on May 20, 2010, pursuant to the December 5, 2008, reinstatement order. And the May 20, 2010 and October 4, 2007 removals are the predicate removals charged in the indictment Torres seeks to dismiss. Given how inextricably linked the current indictment is to the defective 2005 removal, the Court finds that the 2005 defect taints the current, 2012 indictment. Accordingly, the Court now turns to the second prong under *Ubaldo-Figuero*, whether Torres suffered prejudice as a result of the defects. *Ubaldo-Figuero*, 364 F.3d at 1048.

### 2. Whether there was prejudice.

The government contends that the due process error here was harmless because (1) even if Torres had appealed his initial removal order, he was ineligible for cancellation of removal; and (2) Torres was separately deportable because of a felony criminal conviction. Both arguments depart from clearly established legal principles.

To show prejudice, "an alien does not have to show that he actually would have been

granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *See Ubaldo-Figueroa*, 364 F.3d at 1050. Although the Ninth Circuit has not precisely defined "plausibility" in this context, had Torres appeared at the hearing there is at least a probability that he was eligible for relief. At the time, Torres argues that he was eligible for voluntary departure, a form of relief from deportation. Only those aliens "involved in terrorism-related activity . . . and those . . . convicted of an aggravated felony" are ineligible for voluntary departure. *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004). The government calls Torres' contention that he would have pursued voluntary departure "self-serving" and "speculative." Opp. at 10. Given his subsequent criminal history, the government contends that the most likely outcome, even if Torres was granted voluntary departure, is that he would have remained in the United States unlawfully, which would have resulted in an automatic order of removal. *Id.* at 11.

The Court has no crystal ball to determine how a juvenile's life would have turned out had he attended an immigration hearing during his youth, nor does the Ninth Circuit require one. The ground for relief need only be plausible. *See Ubaldo-Figueroa*, 364 F.3d at 1050. Here, Torres has shown that he had a plausible ground for relief that he could have asserted at the hearing. Moreover, allowing the government to use subsequent behavior justify deprivations of due process likely raises due process concerns far beyond those raised by the defective service of process in this case.

The government next argues that the 2007 removal *could have* been based on Torres' near-simultaneous conviction of an aggravated felony, instead of the 2005 removal. There is no dispute that when Torres was deported on October 4, 2007, he had been convicted of an aggravated felony for immigration purposes. *See U.S. v. Morales-Perez*, 467 F.3d 1219, 1221 (9th Cir. 2006) (Cal. H&S § 13351.5 is categorically a drug trafficking crime). However, Torres argues, and the record confirms, that the 2007 removal was solely based on the 2005 removal order. To be sure, as the government notes, in 2007 the government could have terminated the

17

prior NTA and issued a new NTA that incorporated the newly discovered information – that Torres was a convicted felon. Opp. at 9. But the government did not do so.

To turn back time now and allow the government to justify the 2007 removal on grounds not charged in the NTA or other notices at that time would raise additional due process concerns. *See, e.g., Al Mutarreb v. Holder*, 561 F.3d 1023, 1029 (9th Cir. 2009) ("serious due process concerns" would result from affirming removability on grounds not charged); *Leon Paz*, 340 F.3d at 1005, n.2 (disregarding hypothetical bases on which an alien could have been deported when no attempt was made to actually deport the alien on those bases). The government counters that, "because there is only one adverse result in immigration proceedings," deportation, the immigration service need not cite to alternate bases for deportation because in 2005, the government "sustained its burden in showing that the defendant was removable." Opp. at 10. To accept this argument would effectively gut Congress' intent in statutorily providing for the NTA, which provides mandatory information about the nature of the proceedings, the legal authority under which the proceedings are conducted, the acts or conduct alleged to be in violation of law, and other critical details. *See* 8 U.S.C. § 1229(a). Accordingly, the Court rejects the government's position that so long as an alien is deportable, the government need not spell out the actual legal basis for that deportability.

### 3. Remaining § 1326(d) requirements.

Having found that the underlying removal was fundamentally unfair, Torres must also show (1) that he exhausted all administrative remedies available to him to appeal his removal order and (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review. 8 U.S.C. § 1326(d).

Although administrative exhaustion is required before a collateral attack will succeed, the Ninth Circuit has said that the exhaustion requirement cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport

18

with due process. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). Here, the failure of the immigration service to properly serve notice on Torres and his father excuses Torres' failure to exhaust his administrative remedies for the purposes of a collateral attack under 8 U.S.C. § 1326(d)(1). *See Muro-Inclan*, 249 F.3d at 1183. Torres would have been hard pressed to timely file the appropriate appeals where he was not properly informed of these proceedings in the first instance.

Moreover, where a defendant's exhaustion of his administrative remedies is excused, Ninth Circuit courts usually find that the second program has been met – deprivation of opportunity for review. *See, e.g., Pallares-Galan*, 359 F.3d at 1098 ("For the same reasons . . . we hold that Pallares was deprived of meaningful opportunity for judicial review). The government's failure to serve process on Torres not only prevented him from exhausting his administrative remedies, it also prevented him from seeking judicial review of the errant removal order.

## CONCLUSION

Torres has made the requisite showing under § 1326(d) to sustain his attack on the underlying removal order as legally inadequate. His 2005 removal order is inextricably linked to the 2007 and 2010 removals that stand as a predicates for § 1326 illegal reentry criminal charge. Because both removal orders are tainted by the 2005 removal order, neither can lawfully form the predicate basis for a § 1326 illegal reentry charge. Therefore, defendant's motion to dismiss the indictment is GRANTED.

**IT IS SO ORDERED.**

Dated: January 10, 2013

SUSAN ILLSTON
United States District Judge

19